WILLIAM ZEIGLER ET AL. v. MOBILE & OHIO RAILROAD COMPANY.

[39 South. Rep., 811.]

1. CARRIERS. *Baggage. Railroads. Code 1892, § 3568. Termination of liability.*

Under Code 1892, § 3568, regulating the subject of the receipt, transportation, and delivery of baggage by railroad companies, the liability and duty of a company as a carrier continues absolute until the baggage safely reaches its destination and the passenger has had reasonable time and opportunity to obtain it.

2. SAME. *Evidence. Burden of proof.*

In an action against a railroad company for the loss of baggage, the introduction in evidence by plaintiff of his check for the baggage, with proof of its contents and value and that it has not been delivered to him upon demand, makes out a *prima facie* case and puts the burden of proof on the defendant of producing the baggage or showing cause of exculpation from liability.

**3. SAME.** *Demand. Reasonable time.*

What constitutes reasonable time and opportunity for passengers
to call for their baggage after its arrival at destination is ordi-
narily a question of fact for the jury dependent upon the circum-
stances of the particular case.

FROM the circuit court of Monroe county.

HON. EUGENE O. SYKES, Judge.

Zeigler and another, appellants, doing business under the co-
partnership name of Zeigler Brothers, were plaintiffs in the
court below, and the railroad company, appellee, was defendant
there.     From a judgment in defendant's favor the plaintiffs
appealed to the supreme court.     The facts are stated in the
opinion of the court.

*Leftwich & Tubb,* for appellants.

The burden was upon the railroad company to exculpate itself
from the negligence; and the failure to deliver the baggage is
negligence *prima facie.*     *Newberger* v. *Railroad Co.,* 75 Miss.,
303 (s.c., 23 South. Rep., 186) ; *Faison* v. *Railroad Co.,* 69
Miss., 569 (s.c., 13 South. Rep., 37).

A fair statement of the rule controlling this case is made by
2 Rorer on Railroads, 992, and is as follows:

"The strict liability of a common carrier attaches to a railroad
company for the baggage of its passengers confided to its care
and checked accordingly during its passage and for such reason-
able time after its arrival at the place of destination as to give the
passengers an opportunity to call for the same.     What is a rea-
sonable time is not an arbitrary matter of law, but must be left
for determination in each particular case.   After such reasonable
time the liability of the company becomes that of warehouseman
and its liability as carrier ceases."

And in determining what is a reasonable time the custom of
the company, the manner of transporting baggage from the sta-
tion, and all the circumstances surrounding the case should be
considered.     *Mote* v. *C. & N. W. R. R. Co.,* 27 Ia., 22 ;. *Moses*

v. `R. R. Co.,* 64 Am. Dec., 381; *Wood* v. *Crocker,* 86 Am. Dec., 773; *Dittman* v. *K. & W. R. R. Co.,* 51 Am. St. Rep., 352.

The attorneys for appellee below invoked the unjust and harsh rule followed in the cases of *R. R. Company* v. *McGahey,* 58 Am. St. Rep., 118 (36 L. R. A., 781), and *Roth* v. *Railroad Company,* 90 Am. Dec., 756, and like cases.

In commenting upon the McGahey case, just cited, the learned editor of the L. R. A. Reports, where a lengthy note is given discussing the rule and that particular case, says: "The court does not state whether or not the depot was kept open all night. If it would have been closed before the conveyance could have been procured, the ruling in favor of the carrier was clearly wrong; and according to many of the authorities it is doubtful if it was correct even if the depot was kept open all night."

The Roth case was decided in 34 N. Y., 548; but in *Burnett* v. *Railroad,* 45 N. Y., 187, it is said: "The rule of exemption from strict liability was carried to the utmost limit of propriety in that case [referring to the Roth case], to say the least of it."

The rule invoked below and approved by the learned judge could not play in this case until the railroad company had at least introduced some testimony to exonerate itself. Our own court should not follow so unreasonable a rule, as it appears to us, but should adopt the more just one as illustrated by the cases first above cited.

Our court has never passed upon the identical question here presented, but the position taken upon it in cases of like character is favorable to the rule we invoke. See *Tronstine* v. *R. R. Co.,* 64 Miss., 834 (s.c., 2 South. Rep., 255); *Railroad Co.* v. *Horton,* 84 Miss., 490 (s.c., 36 South. Rep., 449).

*J. M. Boone,* for appellee.

When the defendant puts the baggage on the platform ready to be delivered to the owner, who had an opportunity to claim

and receive the same, but elected to leave the baggage unclaimed until the next morning, liability as common carrier ceases and afterwards defendant's liability is that of a warehouseman. *Vimberg* v. *Grand Trunk R. R. Co.,* 27 Am. & Eng. R. R. Cas., 271 (13 Ontario App. Rep., 93); *Clarke* v. *Eastern R. R. Co.* (Mass.), 21 Am. & Eng. R. R. Cas., 307; *Hoeger* v. *Chicago, Milwaukee & St. Paul R. R. Co.* (Wis.), 21 Am. & Eng. R. R. Cas., 308; *Wald* v. *L. & N. R. R. Co.* (Ky.), 58 Am. & Eng. R. R. Cas., 123; *Roth* v. *Buffalo R. R. Co.,* 90 Am. Dec., 756 (34 N. Y., 548); *Texas, etc., R. Co.* v. *Capps,* 16 Am. & Eng. R. R. Cas., 119; *K. C., etc., R. R. Co.* v. *McGahey,* 58 Am. St. Rep., 111 (63 Ark., 344); *Chicago, Rock Island & Pacific Ry. Co.* v. *Boyce,* 24 Am. St. Rep., 268 (73 Ill., 510).

In *Chicago, etc., Co.* v. *Addizoat,* 17 Ill., 632, the court held: "Reasonable time within which the owner must apply for baggage when it is transported on the same train on which he himself travels is directly after its arrival and transfer to the platform, making due allowance for the confusion occasioned by the arrival and departure of the train and for the delay necessarily caused by the crowd on the platform."

In the case of *Ouimett* v. *Henshaw,* 35 Vt., 605, the court reviewed all the authorities on the subject as to when liability of the railroad as a common carrier as to baggage ended, and laid down the rule that the lateness of the hour at which the passenger arrived at his destination does not authorize him to leave his baggage with the depot agent and hold the company liable as a common carrier. It seems to be the well-settled rule that where the passenger fails to call for his baggage and leaves it at the depot and goes home or to his hotel, it is then the duty of the railroad agent to store the baggage in his warehouse. Our contention is that when the passenger permits the baggage to remain at the depot, so that the agent is called upon to store the same, the character of the defendant changes from that of a common carrier to that of a warehouseman.

TRULY, J., delivered the opinion of the court.

At the conclusion of the testimony on behalf of the appellants, the appellee moved the court for a peremptory instruction, because the plaintiffs had failed to make out their case and because the appellee was "not liable for the loss of this trunk, as plaintiffs' agent had failed to call for the trunk immediately on arriving at Okolona." This was granted, and plaintiffs appealed.

The facts giving rise to this litigation are as follows: Zeigler Brothers are merchants. W. B. Smythe is their traveling representative and salesman, carrying a large trunk of samples, the property of his principals. On the occasion in question, Smythe, being at Columbus and desiring to go to Okolona, presented his trunk to the agent of appellee at Columbus, paid the excess baggage fee charged, received a check for the trunk, and took passage for Okolona. The train on which he arrived at Okolona—and on which, his declaration avers, his trunk was also transported—reached that place about 7:30 P.M. Upon arrival at his destination the proof shows that Smythe delivered his check to the hotel baggageman and requested that the trunk be taken to the hotel that night. Owing to the lateness of the hour it was impossible to procure a delivery wagon, and, the trunk being too heavy for easy transportation by hand, it was left there to be delivered the following morning. That night the depot was destroyed by fire.

The law in our state regulating and prescribing the duty of railroad companies in handling baggage of passengers is found in Code 1892, § § 3568, 3569. The section first mentioned requires the carrier to receive and issue a check for the baggage of every passenger who exhibits a ticket, and then provides as follows: "Upon the arrival of the train at the station to which any trunk or baggage is checked, to put it off at a reasonably convenient place to be provided for the deposit of baggage; and it is the duty of the railroad company to safely keep the trunk or baggage at the station until the owner thereof or his agent shall

demand the same." Section 3569 provides that, if baggage be "carelessly or willfully" injured or lost by improper handling or otherwise, the railroad company handling the same shall be liable to the owner in a sum "not less than double the amount of actual damage." These mandates of the law evidence an intention of imposing not only a strict liability, but a high degree of care, upon railroad companies in handling the baggage of passengers; but they seem to have escaped consideration in the trial court. The law does not require of the passenger that he shall "immediately upon arrival" at destination remove his baggage. On the contrary, it is a matter within common knowledge that at many places, when passenger trains arrive during the night, and for many other reasons, it is practically impossible to secure baggage immediately upon arrival. To hold that railroad companies are absolved from all liability for the handling and safe-keeping of baggage at once upon its reaching the point to which it is checked would be to infringe upon the statute law and establish a rule too harsh and rigorous, in view of conditions attendant upon railway travel as it is known to exist.

It was manifest error to give the peremptory instruction in this case. The passenger produced his check for the baggage and (establishing value) proved that it had not been delivered. This made out at least a *prima facie* case for appellants. This cast on appellee the burden of either producing the baggage or showing legal cause of exculpation from liability. We do not here decide, because not necessarily involved, when, if at all, after arrival at destination, the relation of passenger and carrier ends and the liability of mere warehouseman accrues; but we do hold that, until the baggage safely reaches its destination and the passenger has had reasonable time and opportunity to obtain it, the duty of the carrier is absolute.

We also hold that what constitutes reasonable time and opportunity must depend upon the peculiar circumstances of the particular instance, and is a question of fact to be passed on by the jury.                                   *Reversed and remanded.*