6681

STATE *EX REL.* REESE v. ANSEL, GOVERNOR.

NEW COUNTY.—THE GOVERNOR by appointing a commission to ascertain if the requirements of the Constitution as to area, wealth, population, etc., have been met, does not by such act adjudge that the proposed new county is not the same as that voted on within four years previously, and he or his successor at any time before election ordered may adjudicate this question.

Application in the original jurisdiction of this Court by Luther Reese *et al.* for writ of mandamus against Governor Ansel.

*Mr. Geo. T. Jackson,* for relator.

*Attorney General J. Fraser Lyon,* contra.

October 5, 1907. The opinion of the Court was delivered by

MR. JUSTICE WOODS. This is an application for a writ of mandamus requiring his Excellency, Governor Ansel, to order an election on the question of formation of a new county. We shall not enter into the inquiry whether this Court has the power to issue a mandamus requiring the Governor of the State to perform a plain ministerial duty because, in our opinion, the petition does not show any duty which the Governor has failed to perform.

In January, 1907, relators filed a petition with his Excellency, Governor Heyward, for the creation of a new county out of portions of Edgefield and Aiken counties. The description of the territory to be included in the proposed new county was on its face general and approximate, and concluded with this statement: "The foregoing description and boundaries are intended to cut off and include not exceeding one hundred and thirty-five square miles from Edgefield County, and not exceeding two hundred and thirty-five

square miles from Aiken County; and to that end and at any time before final survey and location may be varied, changed or amended by the commissioners acting in behalf of the proposed new county, appointed pursuant to an act approved the 21st day of February, A. D. 1905, they being hereby constituted and appointed attorneys in fact of petitioners for that purpose; the power given them to amend or change the lines or description being ancillary and not exclusive of petitioners' right to amend this petition at any time."

Governor Heyward, under the act of February 21st, 1905, appointed commissioners to investigate whether the requirements of the Constitution "as to area, distance, wealth, population, etc.," had been complied with. Subsequently, the petitioners applied to Governor Ansel, who had succeeded Governor Heyward, to be allowed to amend the petition by substituting for the general description, an exact description of the territory to be included by courses, distances and boundaries shown on the plat. When this application to amend was made, opponents of the new county scheme filed an answer to the petition in which they alleged the proposed new county to be substantially the same as the proposed new County of Heyward, which had been defeated at an election held in December, 1906. Governor Ansel, after hearing argument from both sides, allowed the amendment, but dismissed the petition, on the ground that while there was a variation in territory of about fifty square miles, nevertheless the proposed new county was substantially the same as the proposed new County of Heyward, and, therefore, under the Constitution, no election could be held in less than four years after the election at which the proposed new County of Heyward had been defeated. In *Lamar* v. *Croft,* 73 S. C., 407, 53 S. E., 540, the decision of the question, whether a proposed new county embraces the same territory as one voted on within four years before, was held to be given by the Constitution exclusively to the Governor.

The position taken by the relators is that when Governor Heyward entertained the original proposition, and appointed a commision under the statute to investigate whether the requirement of the Constitution as to area, distance, wealth, population, etc., had been complied with, he necessarily adjudged and determined that the new county now proposed was not the same as the proposed and defeated new County of Heyward.

This position is entirely unsound. It is important to observe the commission is nothing more than machinery provided by the General Assembly to aid the Governor in the performance of the duty, imposed on him by the Constitution, of determining whether the conditions precedent to ordering an election have been met. While the statute requires him before ordering a new county election to appoint the commission for investigation, the investigation and report are only for his information. It is not necessary for him to decide anything before appointing a commission of investigation. Indeed, his decision as to sameness, as well as to other constitutional questions, may well depend entirely on the information afforded by the investigation and report of the commission.

The order of Governor Heyward, appointing the commission, by no means implied even an opinion that the proposed new county was not substantially the same as the proposed new County of Heyward. The inference is much more reasonable that he intended to leave the question to be decided along with the others as to compliance with the Constitution, after the general description of the territory had been verified and made more certain by the investigation and report of the commission.

We are not called on to decide whether the Governor's order for a new county election is irrevocable, but certainly until the order for an election has been made there is no warrant in the Constitution or the statutes for the courts to hold the Governor precluded from reviewing his own conclusions or those of his predecessors in the light of the

information afforded by the commission provided by law to furnish it. At least until the election is ordered, in contemplation of law, the inquiry as to the compliance with all the constitutional requirements is pending before the Governor.

The judgment of this Court is, that the application for mandamus be refused.